**David G. Hosenpud**, OSB No. 83241
hosenpudd@lanepowell.com
**Eric D. Wilson**, OSB No. 04455
wilsone@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Defendant PETA, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **GREGG SCHUMACHER** and **LINDA SCHUMACHER,** individually and as husband and wife, and **GREGG SCHUMACHER FURS LLC, dba SCHUMACHER FURS & OUTERWEAR,**<br><br>                                    Plaintiffs,<br><br>            v.<br><br>**CITY OF PORTLAND,** a municipal corporation; **IN DEFENSE OF ANIMALS,** a foreign nonprofit corporation; **ANIMAL LIBERATION FRONT,** an unincorporated association; **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,** a foreign nonprofit corporation; **MATT ROSSELL; KEVIN MEIRAS, aka "Bluejay"; CONNIE DURKEE; ALEX LILLI; JOHN DOES 1-10;** and **JANE DOES 1-10,**<br><br>                                    Defendants. | CV No. 07-CV-00601-HU<br><br>Defendant PETA, Inc.'s<br>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

PAGE 1 -   DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I.  INTRODUCTION

This Court should deny Plaintiffs' Motion for Preliminary Injunction against defendant People for the Ethical Treatment of Animals, Inc. ("PETA") for one simple reason:  neither PETA nor anyone acting on behalf of or in conjunction with PETA was involved in any of the protests at Schumacher Furs & Outerwear that form the basis of this lawsuit.

Plaintiffs' motion and supporting declarations describe in vivid detail the alleged conduct of protestors who they claim have been outside their store on a daily basis since November 12, 2005.  What plaintiffs do not offer is any link between any of these protestors and PETA.  And for good reason.  As explained in the *Declaration of Matt Rice* submitted herewith, while PETA has organized and promoted *other* protests in Portland, Oregon, since January 1, 2005, none targeted or took place at or near Schumacher Furs.  *At most,* plaintiffs may be able to show that anti-fur leaflets and posters PETA provides to anyone in the world who writes or telephones to request such materials were used by unaffiliated protestors acting without PETA's knowledge or consent during some demonstrations at Schumacher Furs.  PETA's act of mailing anti-fur leaflets and posters to individuals who request them is not tortious conduct.  Rather, it is constitutionally protected free speech.

The central allegation underlying plaintiffs' entire Motion for Preliminary Injunction is verifiably false.  Neither PETA, nor anyone acting on behalf of or in conjunction with PETA, participated in the protests at Schumacher Furs that are the subject of this lawsuit.  Plaintiffs' Motion for Preliminary Injunction must be denied as to defendant PETA.

## II.  FACTUAL BACKGROUND

### A.    Introduction.

PETA is a private, nonprofit corporation founded in 1980 and headquartered in Norfolk, Virginia.  (Rice Decl., ¶ 2.)  PETA is the world's largest animal rights organization with 1.6 million members worldwide.  (Rice Decl., ¶ 2.)  PETA operates under the simple principle that animals are not ours to eat, wear, experiment on, or use for entertainment.  (Rice Decl., ¶ 2.)

PAGE 2 -    DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
              PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

PETA works through public education, cruelty investigations, research, animal rescue, legislation, celebrity involvement, and campaigns targeted at specific issues. (Rice Decl., ¶ 2.) As part of its outreach and campaign activities, PETA regularly organizes protests and demonstrations. (Rice Decl., ¶ 2.) With the help of the media attention these protests typically garnish, PETA is able to raise public awareness on a variety of animal cruelty issues at both the local and national level. (Rice Decl., ¶ 2.)

**B.    PETA Did Not Organize or Promote Any Protests or Demonstrations at Schumacher Furs at Any Time Material to This Action.**

One of PETA's campaigns is its "skins" campaign, which addresses animal cruelty issues involving fur and leather. (Rice Decl., ¶ 3.) Matt Rice, a "campaigns coordinator" at PETA since April, 2004, has served as the coordinator for PETA's skins campaign since August 2006. (Rice Decl., ¶ 3.) Starting in August 2006, and continuing through the present time, Rice has been personally responsible for coordinating PETA's anti-fur protests and demonstrations. Rice has never organized, promoted, or otherwise been involved in any way with any protest or demonstration at Schumacher Furs. (Rice Decl., ¶ 3-7.) Nor is Rice aware of any demonstrations PETA has organized, promoted, or otherwise been involved with at Schumacher Furs since he began work as a campaigns coordinator for PETA in April 2004. (Rice Decl., ¶ 3-7.)

To confirm the fact that PETA has not been involved in the protests at Schumacher Furs that form the basis of this lawsuit, Rice searched the business records that he maintains for PETA's campaigns department for evidence of PETA's involvement with protests and demonstrations in Portland, Oregon, from January 1, 2005, to the present. (Rice Decl., ¶ 8-9.) Rice's search revealed that PETA has organized and promoted only two protests in the greater Portland area since January 1, 2005. None targeted Schumacher Furs and none took place at or near Schumacher Furs. (Rice Decl., ¶ 8-9.) Rice's search did not yield any business records or other evidence suggesting that PETA was involved in coordinating or promoting any

PAGE 3 -    DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
               PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

demonstrations at or near Schumacher Furs during the times alleged in the Complaint.  (Rice Decl., ¶ 8-9.)

Rice has also examined in detail the thirty-three photographs attached to the Declaration of Greg Schumacher in Support of Plaintiffs' Motion for Preliminary Injunction as Exhibits 2a – 2p.  (Rice Decl., ¶ 10.)  These photographs apparently show protestors demonstrating outside of Schumacher Furs.  Rice has coordinated all of PETA's anti-fur and leather protests since 2006 and worked as a campaigns coordinator since 2004, but he does not recognize a single person in any of these photographs.  (Rice Decl., ¶¶ 3-4, 10.)  None of the individuals pictured are PETA employees or individuals acting on behalf of PETA.  (Rice Decl., ¶¶ 3-4, 10.)

Since 2004, *The Oregonian* has published at least fifty articles, letters, and op-eds related to the protests and demonstrations at Schumacher Furs.  (Wilson Decl., ¶ 3.) The articles make reference to several other defendants named in this action.  (Wilson Decl., ¶ 3.)  There is not a single mention of PETA in any of these articles until April 21, 2007, when both *The Oregonian* and AP reported that PETA had been named as a defendant in this lawsuit.  (Wilson Decl., ¶ 5.) In fact, a *Lexis* search of all Oregon news sources with the terms "Schumacher" and "PETA" or "People for the Ethical Treatment of Animals," from 2001 to the present turns up zero articles, except those reporting on this lawsuit.  (Wilson Decl., ¶ 4.)  The same search for "Schumacher" and "Protest" or "Demonstration" turns up 127 articles—again, none of which mention PETA. (Wilson Decl., ¶ 5.)

**C.    PETA Provides Free-Speech Materials to Anyone Who Requests Them Provided It Has No Reason to Suspect the Materials Will Be Used for Any Unlawful Purpose.**

As part of PETA's public outreach and education efforts, it publishes a variety of materials that individuals may use on their own to raise awareness about the inhumane treatment of animals.  (Rice Decl., ¶ 11.)  These materials include leaflets, pamphlets, fact sheets, stickers, bumper stickers, and posters, among other items.  (Rice Decl., ¶ 11.)  The materials are available by mail either for free or for purchase to anyone who writes or calls PETA to request them.

PAGE 4 -    DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

(Rice Decl., ¶ 11.)  However, PETA's policy is to refuse to provide any such materials if the individual requesting them discloses any information suggesting that he or she intends to use them in an unlawful manner.  (Rice Decl., ¶ 13.)

PETA also publishes information sheets emphasizing that individuals using its materials should do so responsibly and lawfully.  (Rice Decl., ¶ 12 & Exs. 1-3.)  PETA publishes a fact sheet on "Making and Distributing Leaflets," which suggests, "Don't waste your time arguing. Say politely, 'I think if you read this material you might change your mind,' and then turn away."  (Rice Decl., ¶ 12 & Ex. 2.)  The fact sheet also warns against placing "leaflets in mailboxes—it is illegal," and advises leafleters to "ask permission * * * before posting them in a public spot."  (Rice Decl., Ex. 2.)  PETA's "Demo Checklist for Activists" lists "tips" that include, "Maintain a professional and personable appearance and attitude throughout the demonstration."  (Rice Decl., Ex. 3.)  The checklist also recommends, "Don't yell or argue with those who disagree with your message."  (Rice Decl., Ex. 3.)  Finally, PETA's "Tabling" fact sheet warns demonstrators to research whether their planned actions will require a permit and to be mindful of ordinances prohibiting certain equipment.  (Rice Decl., Ex. 1.)

In examining the 33 photographs attached to Gregg Schumacher's supporting declaration, Rice was able to recognize three pieces of literature published in whole or in part by PETA. (Rice Decl., ¶ 14.)  With one exception, the materials had been altered from the original format in which they may have been distributed by PETA.  (Rice Decl., ¶ 14.)  Rice recognizes one sticker, which reads, "Fur is Dead," that appears on signs held by two unknown protestors.  (Rice Decl., ¶ 14.)  Rice also recognizes a poster published by PETA that includes an image of the musician Sophie Ellis Bexter holding a skinned fox carcass.  (Rice Decl., ¶ 14.)  The poster has been modified—PETA's slogan has been crossed-out and replaced with a slogan that is not PETA's. This image has then been incorporated into an unknown protestor's sign.  (Rice Decl., ¶ 14.)  Finally, Rice recognizes an image that is owned and licensed by PETA, and that has been

PAGE 5 -   DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
           PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

incorporated into another sign.  Although this sign incorporates PETA's image, PETA did not create, produce, or endorse the balance of this sign.  (Rice Decl., ¶ 14.)

**D.      Plaintiffs Have Not Presented Any Evidence That PETA or Anyone Acting on Behalf of or in Conjunction With PETA Participated in Any of the Tortious Conduct Alleged In The Complaint.**

Plaintiffs have submitted four declarations in support of their Motion for Preliminary Injunction.  There is absolutely no evidence in any of these declarations linking PETA or any PETA employee to any protest or demonstration at Schumacher Furs or to any other conduct alleged in the Complaint.

Plaintiff Greg Schumacher offers a ten-page declaration in support of Plaintiffs' Motion for Preliminary Injunction.  His declaration never mentions PETA, and does not contain a single statement linking PETA to any of the allegations in the Complaint.  (*See* G. Schumacher Decl., ¶¶ 1-15.) Greg Schumacher's declaration includes over forty pages of exhibits—none of which mention PETA or contain a single statement linking PETA to the allegations in the Complaint. (G. Schumacher Decl., Exs. 1-6.)

Plaintiff Linda Schumacher offers a five-page declaration in support of Plaintiffs' Motion for Preliminary Injunction.  Her declaration never mentions PETA and does not contain a single statement linking PETA to any act alleged in the Complaint.  (*See* L. Schumacher Decl., ¶¶ 1-9.) None of the exhibits attached to her declaration mention PETA or connect PETA to the allegations in the Complaint.  The fact that PETA is not mentioned in Exhibit 1-a of Linda Schumacher's Declaration is particularly telling.  (*See* L. Schumacher Decl., Exs. 1-6.)

As noted in Linda Schumacher's Declaration, Exhibit 1-a is a letter the Schumachers' attorney wrote to Portland Police Chief Derrick Foxworth on January 25, 2006, in an attempt to spur increased police oversight of the protestors outside Schumacher Furs.  (L. Schumacher Decl., ¶ 2.)  The letter includes nearly all the same allegations of alleged improper protestor conduct that would later appear in the Complaint filed in this action.  (L. Schumacher Decl., Ex. 1-a.)  There is one crucial difference, however.  While the Complaint attributes the

PAGE 6 -   DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
          PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

protestors' conduct, in part, to PETA, the Schumachers' letter to Chief Foxworth *never mentions PETA*. Instead, the letter asks the police for help with "The Animal Liberation Front, the Earth Liberation Front, the in Defense of Animals organization and other lesser known organizations." (L. Schumacher Decl., Ex. 1-a.)

Plaintiffs offer the declaration of Scott Castleman in support of their Motion for Preliminary Injunction. While Castleman mentions PETA once in his declaration, it is not in connection with any conduct and does not link PETA to any protest. Instead, Castleman states that he "research[ed] the groups that individuals in the mobs were identifying, Animal Liberation Front, In Defense of Animals, People for the Ethical Treatment of Animals * * *." (Castleman Decl., ¶ 10.) First, this statement is hearsay and cannot provide the sole basis for a preliminary injunction against PETA.[1] Regardless, the comment is irrelevant. It does not show a link between PETA or anyone acting on behalf of PETA and the protests at Schumacher Furs, let alone does it ascribe any of the improper conduct alleged in the Complaint to the unknown speaker who allegedly "identify[ied]" PETA.

Finally, plaintiffs also offer the four-page declaration of Herbert G. Grey in support of their Motion for Preliminary Injunction. Like the Schumachers' declarations, Grey never mentions PETA and does not include a single statement linking PETA to any act alleged in the Complaint. Nor do the three exhibits attached to his declaration. (Grey Decl., ¶ 1 & Exs. 1-3.)

**E.    Plaintiffs' Proposed Preliminary Injunction.**

On these facts, plaintiffs seek the following preliminary injunction against PETA: (1) time, place, and manner restrictions on protests at Schumacher Furs; (2) a prohibition on protestors coming within five feet of Schumacher Furs; (3) a prohibition on protestors blocking access to Schumacher Furs; (4) a prohibition preventing signs or other "substances" from being

---

[1] *See Marshall Durbin Farms, Inc., v. Nat'l Farmers Organization,* 446 F.2d 353, 357 (5th Cir. 1971) (vacating preliminary injunction impermissibly granted on the basis of the "extensive use of what appears to be hearsay with respect to disputed factual issues * * *.").

PAGE 7 -    DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

placed on or around Schumacher Furs; (5) a prohibition on protestors coming within 100 feet of Schumacher employees or customers; (6) a prohibition on protestors entering onto land owned by the Schumachers; (7) a prohibition on death threats aimed at the Schumachers; (8) a prohibition on interference with the Schumachers' website; and (9) a prohibition on contact with parties who may be involved with plaintiffs' efforts to relocate their store.  (*See* Complaint, p. 15.)

### III.  POINTS AND AUTHORITIES

A.  **Plaintiffs Lack Standing to Seek Injunctive Relief Against PETA Because Plaintiffs Do Not Seek to Enjoin Any Conduct PETA Ever Engaged in.**

The "case or controversy" clause of Article III of the U.S. Constitution "precludes federal courts from considering claims for equitable relief unless the plaintiff can demonstrate that the threat of future injury by the defendant is 'both real and immediate,' not 'conjectural or hypothetical.'"  *Rose v. City of Los Angeles,* 814 F. Supp. 878, 884 (C.D. Cal. 1993), citing *Smith v. City of Fontana,* 818 F.2d 1411 (9th Cir. 1987).

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660 (1983), the U.S. Supreme Court held that to satisfy the case or controversy standard in a claim for injunctive relief, a plaintiff must show that he "sustained or is immediately in danger of sustaining" some direct injury as a result of the conduct he seeks to enjoin.  *See also Baxter Int'l, Inc., v. Morris*, 976 F.2d 1189, 1194 (9th Cir. 1992) ("[I]njunctive relief must be based on a real apprehension that future acts are not just threatened but in all probability will be committed.").

Plaintiffs have not satisfied the case or controversy requirement for the injunctive relief they seek against PETA because they do not seek to enjoin any conduct PETA or its employees engaged in.  Neither PETA, nor anyone acting on behalf of or in conjunction with PETA, protested outside Schumacher Furs at any time material to this lawsuit.  Nor did PETA or anyone acting on behalf of or in conjunction with PETA protest at the Schumachers' home, harass the

PAGE 8 -    DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Schumachers' customers, or engage in any other conduct plaintiffs seek to curtail through the terms of their proposed injunction.

Plaintiffs cannot credibly argue they are in immediate danger of sustaining direct injury from PETA should this Court decline to issue their proposed preliminary injunction. For that reason, plaintiffs do not have standing to seek the injunctive relief they ask this Court to order against PETA. *See Rose,* 814 F. Supp. at 885 ("The Supreme Court has held that federal courts should not consider claims for equitable relief unless a real threat of future injury to the plaintiff exists. While it is difficult to characterize the point at which a threat of future injury becomes 'credible,' it is clear in this case the plaintiff has failed to meet this burden with respect to her claim for injunctive and declaratory relief."); *EEOC v. Severn Trent Services, Inc.,* 358 F.3d 438, 444 (7th Cir. 2004) (noting that if a preliminary injunction did not bar conduct defendant actually engaged in, "there would be an argument not only that the injunction should not have been issued, but also and more fundamentally that there is no actual controversy before us.").

**B.     Plaintiffs' Motion for Preliminary Injunction Also Fails on the Merits.**

**1.     The Ninth Circuit's preliminary injunction standards.**

It has long been a cardinal principle that a preliminary injunction should not be granted in a doubtful case. *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970), *aff'd*, 405 U.S. 727 (1972). "The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged except in a case clearly warranting it." *Id., quoting Dymo Indus., Inc. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964). This court recently set out the standards that a plaintiff must satisfy to obtain a preliminary injunction in the Ninth Circuit:

> To obtain a preliminary injunction, plaintiff generally must satisfy one of two tests. The traditional test requires plaintiff to show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir. 1995) (citation omitted). In the alternative test, "a court may issue a preliminary injunction if the moving

PAGE 9 -     DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Johnson,* 72 F.3d at 1430 (citations omitted; emphasis in original). The two formulations under the alternative test "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001).

*Sharr v. Dept. of Transp.*, 2003 WL 728956 at * 3 (D. Or. March 3, 2003).

**2.    Plaintiffs have not shown a strong likelihood of success on the merits of their claims against PETA.**

**a.    Plaintiffs do not discuss a single element of a single claim against PETA in their supporting memorandum.**

Plaintiffs bear the burden of showing a strong likelihood of success on the merits of their claims. *Johnson,* 72 F.3d at 1430. Plaintiffs' Complaint includes five common-law tort claims against PETA: (1) intentional infliction of emotional distress, (2) interference with business relations, (3) interference with contract, (4) trespass, and (5) nuisance. (*See* Complaint, p. 7-13.)

Curiously, Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction does not address a single element of any one of their tort claims. Instead, plaintiffs argue they are "reasonably likely to prevail on the merits because the protests far exceed the bounds of protected expression under the First Amendment even in a traditional public forum, and often involve criminal conduct prohibited under federal, state, and local law." (Plaintiffs' Memorandum in Support of Preliminary Injunction, p. 7, ll. 9-13.)

This court should find that, as a matter of law, plaintiffs' have not shown a strong likelihood of success on the merits because they fail to address any of the elements of their claims against PETA or how the evidence in the record might satisfy those elements.

**b.    Plaintiffs' generalized allegations of "mob" conduct are insufficient to carry their burden because this Court must make findings of fact regarding each defendant.**

Under Federal Rules 65(d) and 52(a), a district court's order granting or denying a preliminary injunction motion must set forth findings of fact and conclusions of law which

PAGE 10 -   DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

support the order and provide the reasons for issuing or not issuing the injunction.  *See Wright & Miller, Federal Practice and Procedure*, § 2571, at 678-80 (1971).

When the conduct of multiple defendants is at issue in a motion for preliminary injunction, a court is required under Rule 65(d) and 52(a) to include separate findings of fact regarding the conduct of each defendant.  *New York v. Operation Rescue Nat'l, et al.*, 273 F.3d 184, 200-01 (2nd Cir. 2001).   In *Operation Rescue*, the district court granted a preliminary injunction against all the named defendants, who were protestors, based on the plaintiff's trespass, nuisance, and federal claims.  *Id.*  The Second Circuit reversed the injunction as to one defendant, concluding that the district court impermissibly failed to find that this defendant had engaged in the protest activities that formed the basis of the lawsuit.  *Id.*  In vacating the district court's injunction, the Second Circuit held, "When issuing an injunction, a district court's findings should definitively confirm that injunctive relief is necessitated by current and ongoing plans or activities, and that all named defendants are currently engaged in the plans or activities that constitute a threat * * *."  *Id.* at 200.

Plaintiffs have made no attempt to distinguish or attribute the "mob" conduct outlined in their Complaint to any defendant.  More importantly, plaintiffs have not—*and cannot*—present evidence that would form the basis of a finding of fact that PETA or anyone associated with PETA is responsible for the conduct described in the Complaint. Plaintiffs have not met their burden of showing a strong likelihood of success on the merits of their claims against PETA for this additional reason.

       c.     **At most, plaintiffs may be able to show that PETA engaged in constitutionally protected speech.**

As outlined above, plaintiffs *may* be able to show that some unknown and unaffiliated protestors incorporated stickers and posters published by PETA into signs they used outside of Schumacher Furs.  As explained above, PETA makes such materials available by mail to anyone

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

who writes or calls to request them provided there is nothing in their request suggesting the materials will be used unlawfully. (Rice Decl., ¶ 11-13.)

PETA's act of providing anti-fur stickers and posters through the mail is constitutionally protected speech. "The United States may give up the post office when it sees fit, but [until then] the use of the mails is almost as much a part of free speech as the right to use our tongues." *Lamont v. Postmaster General of the United States,* 381 U.S. 301, 305, 85 S. Ct. 1493, 14 L. Ed. 2d 398 (1965), citing *Milwaukee Publishing Co. v. Burleson,* 255 U.S. 407, 437, 41 S. Ct. 352, 363, 65 L. Ed. 704 (1921).[2]

The U.S. Supreme Court has held that there is a "heavy presumption" against enjoining constitutionally protected expression. *See Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S. Ct. 1575; 29 L. Ed. 2d 1 (1971). Courts in the Ninth Circuit follow this rule. Where a preliminary injunction is at issue, they have distinguished between constitutionally protected *expression*, which will not be enjoined, and unprotected *conduct,* which may be curtailed. *See, e.g., One World One Family Now, Inc. v. Nevada*, 806 F. Supp. 1457, 1461-63 (D. Nev. 1994), citing *Gaudiya Vaishnava Soc. v. City of San Francisco*, 952 F.2d 1059 (9th Cir. 1990).

Here, plaintiffs have not introduced any evidence to show that PETA or anyone acting on behalf of or in conjunction with PETA engaged in any of the conduct alleged in their complaint. The possibility that PETA may have sent some unknown and unaffiliated protestors stickers or posters is a constitutionally protected speech activity for which there is no legal basis to enjoin.

**3.      Plaintiffs also have not met their burden of showing irreparable injury.**

Plaintiffs also bear the burden of showing the possibility that they will suffer irreparable injury if this Court does not enter their requested injunction. *Johnson,* 72 F.3d at 1430.

---

[2] This language appears in Justice Holmes' dissent in *Burleson*, but the U.S. Supreme Court has since adopted his opinion. *See Blount v. Rizzi,* 400 U.S. 410, 416, 91 S. Ct. 423, 27 L. Ed. 2d 498 (1971).

PAGE 12 -  DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' argument on irreparable injury is at page fourteen of their supporting memorandum. Plaintiffs first argue that their burden of showing irreparable injury is "relatively light" given their "strong likelihood of success." Plaintiffs then cite *Elrod v. Burns,* 427 U.S. 347, 373 (1976), for the rule that "a single day's deprivation of constitutional rights constitutes irreparable injury." Plaintiffs then attempt to bring themselves within *Elrod's* rule by stating that their "First Amendment, equal protection, substantive due process, and other rights are at stake here * * *." (Plaintiffs' Memorandum in Support of Preliminary Injunction, p. 14.)

The problem with plaintiffs' argument is that while they *have* brought First Amendment, Equal Protection, and Due Process claims in this action, those claims are only against the City of Portland, which, quixotically, is *not* named in Plaintiffs' Motion for Preliminary Injunction. The alleged deprivation of plaintiffs' constitutional rights is not before this Court at this time and plaintiffs cannot satisfy their burden on the element of irreparable injury simply by citing the Supreme Court's *Elrod* decision. In contrast, as described above, PETA's constitutional rights *are* presently before this Court and could potentially be threatened by a ruling on Plaintiffs' Motion for Preliminary Injunction.

By plaintiffs' own account, the protests at Schumacher Furs began on November 12, 2005. (Complaint, p. 4.) Now, eighteen months later—and less than three weeks before their store is scheduled to close—plaintiffs seek to enjoin these protests. (*See* Plaintiffs' Memorandum in Support of Preliminary Injunction, p. 6) (noting Schumacher Furs will close May 31, 2007).

Preliminary injunctions are not intended to punish for past behavior, rather, the purpose of a preliminary injunction is to forestall future conduct that cannot be adequately remedied through other means. *See United States v. Oregon Med. Society*, 343 U.S. 326, 333, 72 S. Ct. 690, 96 L. Ed. 978 (1952). Absent the risk of continuing irreparable injury, and the inadequacy of legal remedies to cure those injuries, a plaintiff is not entitled to a preliminary injunction. *Pulliam v. Allen,* 466 U.S. 522, 537, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984).

PAGE 13 -  DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Here, plaintiffs cannot show irreparable harm or the inadequacy of legal remedies in the event this Court denies their Motion for Preliminary Injunction.  If there were any "irreparable injury" argument to be made in this case, it would be the closing of plaintiffs' store.  *See Deerfield Med. Ctr. v. City of Deerfield Beech,* 661 F.2d 328, 338 (5th Cir. 1981) (injury is irreparable in nature if it cannot be undone by monetary damages). But granting plaintiffs' proposed injunction will not prevent Schumacher Furs from closing—plaintiffs concede they have already agreed to vacate the store by May 31, 2007.  Plaintiffs cannot show that the legal remedies potentially available to them through their common-law tort claims are inadequate to compensate them for any of the other injuries claimed in the Complaint.  Plaintiffs' allegations that they lost revenue, suffered emotional harm and humiliation, and endured intrusions onto their real property are all covered by the remedies potentially available to them at law.

Plaintiffs' failure to establish that their legal remedies are inadequate or that they will suffer irreparable injury if their proposed injunction is not granted provides an additional basis for this Court to deny their motion.

### 4.    The public's interest in free speech weighs against plaintiffs' proposed injunction.

The Ninth Circuit requires an analysis of the impact that a preliminary injunction would have on the public interest, which is primarily intended to address the impact of the injunction on non-parties.  *See Fund for Animals v. Lujan,* 962 F.2d 1391, 1400 (9th Cir. 1992); *Westlands Water Dist. v. Natural Resources Defense Council,* 43 F.3d 457, 459 (9th Cir. 1994).

"Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial District Court of Carson City,* 303 F.3d 959, 975 (9th Cir. 2002) (citing cases); *see also Homans v. Alburquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.").

PAGE 14 -  DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
         PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The principles of free expression set forth in *Sammartano* and *Homans* weigh heavily against plaintiffs' proposed injunction to the extent they seek to curtail or to "chill" constitutionally protected speech activities.  The public's right to free speech is significant and should not be curtailed unless the reasons for doing so are compelling.  As explained above, plaintiffs have not provided any such compelling reasons.  This element of the Ninth Circuit's preliminary injunction standard cuts against plaintiffs' proposed preliminary injunction and provides an additional basis for this Court to deny their motion.

## CONCLUSION

Plaintiffs should not have filed this lawsuit or the instant Motion for Preliminary Injunction against PETA because PETA was not involved in the conduct alleged in their Complaint.  Plaintiffs have not—and could not—introduce any evidence to the contrary.  The possibility that PETA may have mailed some unaffiliated individuals stickers or posters is constitutionally protected activity for which there is no legal basis to enjoin.  Plaintiffs' Motion for Preliminary Injunction should be denied as to defendant PETA.

DATED:  May 11, 2007

LANE POWELL PC


By s/Eric D. Wilson
    David G. Hosenpud, OSB No. 83241
    Eric D. Wilson, OSB No. 04455
    Telephone:  503.778.2100
Attorneys for Defendant PETA, Inc.

PAGE 15 -  DEFENDANT PETA INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION