Jami L. Pannell, OSB #06429
Animal Law Clinic
Lewis & Clark Law School
10015 SW Terwilliger Boulevard
Portland, OR 97219-7799
Telephone:  503.768.6848
Facsimile:  503.768.6917
Email:       anmlclin@lclark.edu

Shauna Curphey, OSB #06306
Northwest Constitutional Rights Center
520 SW Sixth Avenue, Suite 1050
Portland, OR 97204
Telephone:  503.295.6400
Facsimile:  503.295.6415
Email:       scurphey@nwcrc.org

Attorneys for Defendant Kevin Mieras

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| GREGG SCHUMACHER and LINDA SCHUMACHER, individually and as husband and wife, and GREGG SCHUMACHER FURS LLC dba SCHUMACHER FURS & OUTERWEAR, | ) ) ) ) ) ) | CV 07-00601-MO |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | SUPPLEMENTAL AFFIDAVIT OF KEVIN MIERAS |
| CITY OF PORTLAND, a municipal corporation; IN DEFENSE OF ANIMALS, a foreign nonprofit corporation; ANIMAL LIBERATION FRONT, an unincorporated association; PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., a foreign nonprofit corporation; MATT ROSSELL; KEVIN MIERAS aka "Bluejay"; CONNIE DURKEE; ALEX LILLI; JOHN DOES 1-10; and JANE DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

SUPPLEMENTAL AFFIDAVIT OF KEVIN MIERAS

State of Oregon        )
                       ) ss:
County of Multnomah)

    I, Kevin Mieras, being duly sworn and under penalty of perjury, depose and state:

1.     I make this affidavit based upon my personal knowledge.

2.     I am a named defendant in this lawsuit.

3.     I cannot comply, in part, with the Court's Order dated Friday, May 22, 2007 with respect to the following:

> a. Directing any form of communication, orally or in writing, to Gregg or Linda Schumacher, their family members, or employees of Schumacher Furs;
>
> b. Physically touching Gregg or Linda Schumacher, their family members, or employees of Schumacher Furs;
>
> c. Entering on the residential property of Gregg or Linda Schumacher, their family members, or employees of Schumacher Furs; and
>
> d. Placing any solid or liquid substances on or around Schumacher Furs store.

    The reasons I cannot comply with these provisions are because I do not know the identity of all the Schumacher employees and family members, nor do I know the location of their residences. I also do not understand if "solid or liquid substances" include food, drink and chalk, or how far away from the Schumacher Furs store includes "around Schumacher Furs store."

4.     Up to the date of the Order, I expressed anti-fur messages in front of the Schumacher Furs store every Saturday. I began attending the demonstrations in mid-February 2006. I could not have identified Gregg Schumacher by sight at that time, and I do not

understand how he could have possibly recognized me by sight or by voice at that time, which is the same time the alleged "Hey, Gregg! Hey, Gregg!" statement occurred.

5. I have not continuously verbally taunted Gregg Schumacher as he claims. On a recent Saturday, approximately three weeks ago, I saw Gregg Schumacher leaving the store and I said to him in my normal speaking voice, "See you next week, Gregg."

6. I have been taunted by both of the Schumachers and two of their employees. For example, as Gregg Schumacher was leaving the fur shop on November 18, 2006, he went out of his way to step on my foot. Attached to this Affidavit as Exhibit A are true and correct copies of video footage I captured: on November 26, 2006, of Linda Schumacher taunting me about being a hypocrite; on April 22, 2007, of a Schumacher employee calling me a "faggot" and a "pussy" as well as putting his camera in my face; and on January 12, 2007, of a different Schumacher employee pointing his finger very close my face. In all of these clips, I was the person filming.

7. I have never intentionally appeared on or near the Schumachers' residential property. I never called out "Hey, Gregg! Hey, Gregg!" near their residence. I have never been contacted by the police with respect to this accusation. I have never been confronted by Gregg or Linda Schumacher about this accusation, even though they verbally engaged and confronted me on my beliefs and other topics long after this nighttime calling allegedly occurred.

8. I am shown in two of the photos attached to Gregg Schumacher's original Declaration; specifically, the bottom two photographs shown in Exhibits 2-b and 2-c. In both photos, I am clearly on the public sidewalk, fully clothed, holding a sign. Attached as Exhibit B are true and correct copies of these photographs with arrows indicating my position in the photographs.

9. I am shown in a few seconds of the videotape attached to Gregg Schumacher's original Declaration; specifically, on or about the 8-minute, 33-second mark through the 9-minute mark in Exhibit 1. Attached as Exhibit C is a true and correct copy of a screen shot of my appearance in the video with an arrow indicating my position in the video. Again, I am fully clothed and not saying anything. These exhibits show my subdued, typical, and consistent behavior at the protests, and show that I remained calm even when the protests were at their most sensational peaks.

10. I was present at most or all of the demonstrations shown in the video marked as Exhibit 1 in Gregg Schumacher's original declaration, and I know from the activities shown that the video was shot in February or March of 2006. The video captured at that time only shows the most sensational moments in a year and a half of anti-fur demonstrations. In all the protests I attended, I rarely saw individuals engaged in such raucous behavior.

11. I read two Oregonian articles dated May 18, 2007, and May 22, 2007, addressing the outcome of the preliminary injunction hearing in this case. Attached as Exhibits D and E are true and correct copies of those articles. Reading the articles caused me to suffer a great amount of stress and humiliation, as several of my friends, and my employer, asked me about why I was the only person enjoined from certain activities. I learned that the outcome of the hearing, coupled with the Oregonian articles, caused others to believe that I am guilty of outrageous and illegal conduct toward the Schumachers, their employees and their family members.

//
//
//
//

PAGE 4 –  SUPPLEMENTAL AFFIDAVIT OF KEVIN MIERAS

12. Every Saturday, I bring beverages and vegan food to the anti-fur demonstrations, which I share with other demonstrators, homeless individuals and other passersby.

DATED: May 24, 2007

_____
KEVIN MIERAS

SUBSCRIBED AND SWORN TO before me this 24th day of May, 2007, in Portland, Oregon.

_____
Notary Public in and for the State of Oregon
My Commission Expires: 10-29-08

OFFICIAL SEAL
TIA M. HUGHES
NOTARY PUBLIC-OREGON
COMMISSION NO. 385385
MY COMMISSION EXPIRES OCTOBER 29, 2008

PAGE 5 – SUPPLEMENTAL AFFIDAVIT OF KEVIN MIERAS









EXHIBIT C

OregonLive.com's Printer-Friendly Page                                                    Page 1 of 2



# The Oregonian

## Judge sets rules for fur shop protester
**Portland - Gregg Schumacher accuses an animal-rights activist of being outside his house**

Friday, May 18, 2007
**BRYAN DENSON**
The Oregonian

A federal judge on Thursday ordered an animal-rights activist to keep his distance from a Portland fur salon, its owners and their family and employees.

U.S. District Judge Michael W. Mosman also signaled that he might similarly bar 20 unidentified raucous protesters who for 18 months have conducted weekly demonstrations outside Schumacher Furs & Outerwear at 811 S.W. Morrison St.

Mosman ruled that protester Kevin Mieras, accused by owner Gregg Schumacher of calling to him in the darkness outside Schumacher's home, was not to communicate with or in any way touch the Schumachers, their family or employees. The judge also ruled that Mieras was not to enter their properties, although the activist swore in court papers he's never been there.

"I have never gone to the residence of the Schumachers or any of their employees or family members," Mieras wrote in an affidavit, "nor do I know where any of them reside."

Last month, Gregg and Linda Schumacher filed a federal civil rights lawsuit against animal-rights activists and the city of Portland, whom they accused of helping to drive their salon out of business. The store remains open through the end of this month, and protests are expected to continue.

The Schumachers included in their filing a motion for a preliminary injunction against the activists and two major animal-rights groups: In Defense of Animals and People for the Ethical Treatment of Animals.

Thursday's hearing on that motion came as a victory for PETA, In Defense of Animals and two IDA employees, who were accused of having a role in lawless protests outside the salon. Mosman said he heard no evidence to support an order barring the two groups or their workers from protesting lawfully outside the salon.

The judge expressed more concern about the actions of unnamed demonstrators, who are named "John Does 1-10" and "Jane Does 1-10" in the Schumacher lawsuit.

Lawyers for the Schumachers submitted videotapes showing masked protesters ganging at the company's doorway, screaming obscenities and following customers to their cars. The tapes also showed women cavorting topless outside.

"You are in the unenviable position," Mosman said to the Schumachers' lead attorney, Herb Grey, "of being harmed by people whose names you do not know."

Grey presented the judge with a summary of a 1980 Wisconsin case in which Billy Joel won a temporary restraining order against "Various John Does," whom the singer accused of selling unlicensed merchandise outside his concerts.

**EXHIBIT D-1**

Mosman said he would study the case, then asked attorneys to submit thoughts about whether he should put limits on the protests by the unnamed demonstrators.

An attorney for In Defense of Animals, Mark McDougal, told Mosman he would oppose such limits, saying he was concerned that it would have a "chilling effect" on lawful protests.

The judge signaled that he would consider requirements to keep protesters at least 15 feet from the front door of the salon; prevent them from placing signs or substances on or around the store; and from entering the properties of the Schumachers, their family or employees.

Mosman said he expected to issue a ruling today.

Bryan Denson: 503-294-7614; bryandenson@news.oregonian.com

©2007 The Oregonian

EXHIBIT
D-2

OregonLive.com's Printer-Friendly Page                                    Page 1 of 1



# The Oregonian

## U.S. judge refuses to restrict protesters at Portland fur shop

Wednesday, May 23, 2007
**The Oregonian**

A federal judge on Tuesday declined to put restrictions on a throng of anti-fur protesters who demonstrate weekly outside a Portland fur salon.

U.S. District Judge Michael W. Mosman wrote that concerns about jurisdiction and enforcement caused him to reject a motion by Schumacher Furs & Outerwear to impose limits on the protest rights of 20 unnamed protesters.

In a two-page order, Mosman wrote that he could not put restrictions on the free speech rights of the group "in order to prevent some from exceeding the bounds of protected activity."

Mosman ruled that one protester, Kevin Mieras, is temporarily enjoined from entering the fur salon or getting within 15 feet of its entrances; placing signs on or near the business; or leaving solid or liquid substances around the store.

The judge also prohibited Mieras from communicating with, touching or entering the residences of Gregg or Linda Schumacher, their families or employees of the salon.

Mosman's order places identical restrictions on anyone who participates with Mieras and is served notice of the order.

Gregg and Linda Schumacher have alleged that Portland police have looked the other way as masked protesters broke the law outside their store. Last month, they filed a lawsuit against the city and animal-rights protesters.

The Schumachers have said they intend to vacate their downtown salon by the end of the month. -- Bryan Denson

©2007 The Oregonian


EXHIBIT E