IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GREGG SCHUMACHER and LINDA                    CV-07-601-MO
SCHUMACHER, individually and as
husband and wife, and GREGG                   OPINION AND ORDER
SCHUMACHER FURS LLC dba SCHUMACHER
FURS & OUTERWEAR,

                    Plaintiffs,

v.

CITY OF PORTLAND, a municipal
corporation; IN DEFENSE OF
ANIMALS, a foreign nonprofit
corporation; ANIMAL LIBERATION
FRONT, an unincorporated
association; PEOPLE FOR THE
ETHICAL TREATMENT OF ANIMALS,
INC., a foreign nonprofit
corporation; MATT ROSSELL; KEVIN
MIERAS aka "Bluejay"; CONNIE
DURKEE; ALEX LILLI; JOHN DOES 1-
10; and JANE DOES 1-10,

                    Defendants.


HERBERT G. GREY
JILL ODELL
4800 SW Griffith Drive, Suite 320
Beaverton, OR  97005-8716

JONATHAN A. CLARK
960 Liberty Street SE, Suite 250
Salem, OR  97302

          Attorneys for Plaintiffs

JAMI L. PANNELL
Animal Law Clinic, Lewis & Clark Law School
10015 SW Terwilliger Boulevard
Portland, OR  97219-7799

1  -   OPINION AND ORDER

**Shauna Curphey**
Northwest Constitutional Rights Center
520 SW Sixth Avenue, Suite 1050
Portland, OR  97204

        Attorneys for Defendant Kevin Mieras

**MOSMAN, J.**

     This matter comes before the Court on Defendant Kevin Mieras' Special Motion to Strike the Complaint (#16), filed pursuant to Oregon's "anti-SLAPP" statute, ORS 31.150 *et seq*.

On June 18, 2007 the Court conducted an evidentiary hearing on Defendant's motion.  The Court heard oral argument from counsel for Mieras, and counsel for co-Defendants In Defense of Animals (IDA), People for the Ethical Treatment of Animals (PETA), and individuals Matt Rossell and Connie Durkee, who joined Mieras in the Special Motion to Strike the Complaint.

At the conclusion of the hearing the Court granted the motion as to IDA, PETA, Rossell and Durkee. (#61).  The Court also granted, in part, the motion as to Mieras, but requested supplemental memoranda from Mieras, and from Plaintiffs, regarding Plaintiffs' claim of Intentional Interference with Business Relations and Contract.  On June 28, 2007 the Court took under advisement the remaining portion of Mieras' motion.  The Court now GRANTS, in whole, Mieras' Special Motion to Strike (#16).

The Court finds that Mieras has met his burden, under ORS 31.150(2)(c) and (d), of showing Plaintiffs' claims against him

2  -   OPINION AND ORDER

arise out of an "oral statement made, or written statement or
other document presented, in a place open to the public or a
public forum in connection with an issue of public interest," or
"other conduct in furtherance of the exercise of the
constitutional right to petition or the constitutional right of
free speech in connection with a public issue or an issue of
public interest."  Accordingly, the burden shifts to the
Plaintiffs to establish that "there is a probability that [they]
will prevail on the claim by presenting substantial evidence to
support a *prima facie* case."  *See* ORS 31.152(3).  In considering
whether plaintiffs have met this burden, the court assumes the
truth of all plaintiffs' allegations.  *See* ORS 31.150(1)(stating
that a special motion to strike "shall be treated as a motion to
dismiss under ORCP 21"); *see also L.H. Morris Electric v. Hyundai
Semiconductor*, 187 Or. App. 32, 35, 66 P. 3d 509 (2003).

The Court finds that, even assuming the truth of the
allegations in Plaintiff's complaint and supporting affidavits,
Plaintiffs have not presented substantial evidence sufficient to
support each element of the tort of Intentional Interference with
Business Relations or Intentional Interference with Contract as
against Mieras.  To prevail on these claims Plaintiffs must
establish: (a) the existence of a professional or business
relationship or enforceable contract; (b) intentional
interference with that relationship by Mieras; (c) accomplished

3   -   OPINION AND ORDER

through improper means or for an improper purpose; (d) a causal effect between the interference and harm to the relationship or contract; and (e) damages. *Allen v. Hall*, 328 Or. 276, 281 (1999).

Plaintiffs have established by substantial evidence the existence of a professional and/or business relationship with their customers, and an enforceable lease contract with the lessor of the retail space where Schumacher Furs & Outerwear store was located at the time the events alleged in the complaint are said to have occurred. Thus, Plaintiffs have shown substantial evidence of the first element of both torts.

However, Plaintiffs have not established by substantial evidence that Mieras intended to interfere with Plaintiffs' contractual relationship with their lessor, or with prospective lessors. The complaint alleges anti-fur protestors, including Mieras, did so by "creating a business environment that caused [the lessor] to consider [Plaintiffs] an undesirable tenant and to terminate the existing lease and evict [Plaintiffs]," and by "communicating with property managers, property owners and lessors of other potential retail locations in a manner that had the purpose or the effect of discouraging property managers, property owners and lessors of other potential retail locations from leasing to [Plaintiffs]." Supporting affidavits from the Plaintiffs allege "orchestrated efforts" by anti-fur protestors,

4  -  OPINION AND ORDER

generally, to contact other landlords and property managers to prevent Plaintiffs from moving their store to another location. However, Plaintiffs have not specifically shown that Mieras, himself, communicated with their lessor or potential lessors either orally or in writing, or even that he directed others to do so.

Since Plaintiffs have failed to present any evidence upon which the Court could conclude that Mieras ever had contact with Plaintiffs' landlord, or prospective lessors, the Court finds Plaintiffs have not shown by substantial evidence that Mieras intentionally interfered with that relationship.  Therefore, the Court finds Plaintiffs have not demonstrated the likelihood of prevailing against Mieras on the claim of Intentional Interference with Contract.

Plaintiffs have similarly failed to show substantial evidence to support a *prima facie* case that Mieras intentionally interfered with their business relationship with customers.  The complaint alleges anti-fur protestors, including Mieras, acted with the intent of "discouraging patronage of plaintiffs' store and driving plaintiffs out of business."  At oral argument, and in their supplemental briefing to the Court, Plaintiffs also argued that Mieras' anti-fur website, which uses the domain names www.portlandfurcruelty.com, and www.shumacherfurs.com, evinces an intent to "draw people away from the Schumacher site to keep them

from the information they sought there."  Though Mieras testified

that the website's only purpose is to educate the public about

the fur industry, for purposes of ORS 31.152(3) the Court views

this dispute over what the evidence shows about Mieras' intent in

Plaintiffs' favor.  Plaintiffs have made the requisite showing

that the website is intended to interfere with Plaintiffs'

business relationship with their customers.  However, Plaintiffs

have not shown that the website actually resulted in any

interference with customer relations.  Thus, the website does not

constitute substantial evidence that Mieras "intentionally

interfered" with Plaintiffs' customer relations.

Moreover, Plaintiffs do not allege that the website

constitutes improper means of interfering with those

relationships, or that Mieras hosted the website with an improper

purpose[1].  In fact, Plaintiffs do not specifically allege Mieras,

individually, used any improper means to induce customers not to

enter Schumacher Furs & Outerwear store.  Instead, Plaintiffs

---

[1] Plaintiffs have not alleged that Mieras profits from this
website, and Mieras testified that he does not.  Plaintiffs also
have not asserted that they are owners of a registered trademark
such that Mieras' use of a similar mark could confuse the public
sufficiently to constitute trademark infringement under the
Lanham Act, thereby constituting improper means as a matter of
law.  *See Brookfield Communications, Inc. v. West Coast
Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999)(to
establish a trademark infringement claim for use of a similar
domain name under the Lanham Act, plaintiff must establish
defendant is using a mark confusingly similar to plaintiffs'
valid, protectable trademark).

claim that Mieras is vicariously liable for the improper means employed by protestors, such as "harassment, intimidation, violation of noise ordinances, public nudity, and blocking sidewalks," because he "seems to be one of the leaders of the protests and protestors."

There is not any dispute that this conduct occurred during protests outside Schumacher Furs & Outerwear store, or that such conduct constitutes improper means under Oregon law. *See Top Service Body Shop, Inc. v. Allstate Insurance Co.*, 283 Or. 201, 209 (1978). The dispute arises over whether Plaintiffs' guess that Mieras directed others to engage in such activity constitutes substantial evidence that he did, and if so, whether those activites are properly imputed to Mieras.

When illegal activities occur in the context of constitutionally protected activity, "the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916-17 (1982). For instance, liability cannot be imposed on either "guilt *by* association" or "guilt *for* association" theories. *Id.* at 925 (finding that the First Amendment prohibits imposition of liability on the basis of attendance and participation in an organization's meetings).

Plaintiffs contend that *N.A.A.C.P. v. Claiborne Hardware*

*Co.*, 458 U.S. 886 (1982), is inapposite here because, at least with respect to their claims against Mieras, Plaintiffs are not seeking to hold an organization liable for the conduct of some of its members.  Unfortunately, Plaintiffs fail to notice the similarity between their claims against Mieras and the *Claiborne* plaintiffs' claims against co-defendant Charles Evers, who was one of the principal organizers of the civil rights boycotts that resulted in damage to Claiborne Hardware Company and other businesses.  The Supreme Court held that "the emotionally charged rhetoric of Charles Evers' speeches did not transcend the bounds of protected speech," and therefore did not expose him to liability for the actions of his audience, notwithstanding his "strong language," because Evers did not authorize, ratify or direct specific tortious activity, and to the extent he advocated the use of force or violence, his speeches did not provoke immediate violence or create immediate panic.  *Id*. at 886 (*citing Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)("fighting words" that provoke immediate violence are not protected), and *Schenck v. United States*, 249 U.S. 47 (1919)(falsely shouting "fire" in a public theater not protected speech)).

Similarly, in this case, Plaintiffs have not made any showing that Mieras authorized, ratified, or directed protestors to harass, intimidate, disrobe, block sidewalks, or violate noise ordinances, or that Mieras incited immediate violence or

widespread panic.  At most the Court could find from Plaintiffs' pleadings and exhibits that Mieras had conversations with other protestors, and videotaped some of the protest activity.

Thus, in the absence of any authority to support imposing vicarious liability on an individual for the acts of others on the basis that he "seems to be one of the leaders" of the others, this Court finds that Plaintiffs have failed to show substantial evidence that Mieras employed improper means or an improper purpose to interfere with Plaintiffs' business relationship with their customers.  Accordingly, the Court finds Plaintiffs have not demonstrated a likelihood of prevailing against Mieras on the claim of intentional interference with business relations.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court **GRANTS**, in whole, Defendant Kevin Mieras' Special Motion to Strike the Complaint (#16).

IT IS SO ORDERED.

DATED this  20th  day of September, 2007.


/s/ Michael W. Mosman
MICHAEL MOSMAN
United States District Judge

9  -  OPINION AND ORDER