IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREGG SCHUMACHER and LINDA SCHUMACHER, individually and as husband and wife, and GREGG SCHUMACHER FURS LLC dba SCHUMACHER FURS & OUTERWEAR, | CV-07-601-MO |
| | OPINION AND ORDER |

        Plaintiffs,

v.

CITY OF PORTLAND, a municipal
corporation; IN DEFENSE OF
ANIMALS, a foreign nonprofit
corporation; ANIMAL LIBERATION
FRONT, an unincorporated
association; PEOPLE FOR THE
ETHICAL TREATMENT OF ANIMALS,
INC., a foreign nonprofit
corporation; MATT ROSSELL; KEVIN
MIERAS aka "Bluejay"; CONNIE
DURKEE; ALEX LILLI; JOHN DOES 1-
10; and JANE DOES 1-10,

        Defendants.

HERBERT G. GREY
JILL ODELL
4800 SW Griffith Drive, Suite 320
Beaverton, OR  97005-8716

JONATHAN A. CLARK
960 Liberty Street SE, Suite 250
Salem, OR  97302

       Attorneys for Plaintiffs

MARK G. MCDOUGAL
NATHALIE MCDOUGAL
GREGORY KAFOURY
Kafoury & McDougal, Lawyers

1  -   OPINION AND ORDER

320 SW Stark Street #202
Portland, OR  97204

       Attorneys for Defendants IDA, Rossell and Durkee

**DAVID G. HOSENPUD**
**ERIC D. WILSON**
Lane Powell, P.C.
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158

       Attorneys for Defendant PETA

**JAMI L. PANNELL**
Animal Law Clinic
Lewis & Clark Law School
10015 SW Terwilliger Boulevard
Portland, OR  97219-7799

       Attorney for Defendant Mieras

**MOSMAN, J.**

_____Before the Court are the Motions for Attorney Fees, filed pursuant to Federal Rule of Civil Procedure (Rule) 54(d)(2) and Oregon Revised Statute (ORS) 31.152(3), by Defendants In Defense of Animals (IDA), People for the Ethical Treatment of Animals (PETA), and individuals Matt Rossell (Rossell), Connie Durkee (Durkee), and Kevin Mieras (Mieras).  For the reasons set forth below, I GRANT IN PART the motions in the amount of **$96,870.85.**

### PROCEDURAL BACKGROUND

In May 2007 I denied Plaintiffs' Motion for a Preliminary Injunction (#3) as to Defendants IDA, PETA, Rossell and Durkee, and I granted Plaintiffs' Motion for a Preliminary Injunction (#3) as to Defendant Mieras.  (#36).  In May 2007 I granted, in

whole, Defendants IDA, PETA, Rossell and Durkee's Motion to
Strike the Complaint, filed pursuant to Oregon's anti-SLAPP[1]
statute (#16), and I granted, in part, Mieras' Motion to Strike
the Complaint.  (#61).  At that time I also lifted the
preliminary injunction against Mieras because I concluded that
the balance of evidence as of May 18, 2007 did not support
ongoing restraint of Mieras' liberties.  A Rule 54(b) Judgment of
Dismissal as to Defendants IDA, PETA, Rossell and Durkee was
entered on July 6, 2007.  Thereafter, on August 10, 2007 PETA,
IDA, Rossell and Durkee filed motions for Attorney Fees (#76,
84).  Before responding in opposition to these motions (#93, 94),
on August 13, 2007 Plaintiffs filed a Motion for Reconsideration
(#90) of my Judgment dismissing these Defendants.

On September 20, 2007 I granted (#102), in whole, Defendant
Mieras' Motion to Strike the Complaint, and entered a Rule 54(b)
Judgment of Dismissal as to Mieras (#103).  On October 4, 2007
Mieras filed his own Motion for Attorney Fees (#104).
Thereafter, on October 10, 2007 I denied Plaintiffs' Motion for
Reconsideration (#108).  Plaintiffs responded in opposition to
Mieras' Motion for Attorney Fees (#110), and PETA and IDA,
Rossell and Durkee (hereinafter referred to as "IDA") filed
Supplemental Motions for Attorney Fees, primarily for time billed

---

[1] The acronym SLAPP stands for Strategic Lawsuit Against
Public Participation.

3  -   OPINION AND ORDER

responding to Plaintiffs' Motion for Reconsideration (#111, 115).

_____Notably, on November 19, 2007, Plaintiffs together with the City of Portland filed a Stipulation of Dismissal of all claims against the City.  (#119).

### FACTUAL BACKGROUND

Schumacher Furs and Outerwear (SFO) was a retail store, located at 811 SW Morrison Street in Portland, Oregon, whose primary products and services included the manufacture, sale, servicing and storage of fur clothing.  In November 2005, animal rights advocates began staging weekly protests outside SFO, usually on Saturdays.  The protests sometimes involved dozens of people, many of whom blocked the entrance to SFO, displayed signs with anti-fur messages, played videotapes on a portable television depicting animals being skinned alive for their fur, chanted anti-fur slogans, shouted obscenities and threats to passers by and to Plaintiffs and their employees, and followed customers as they exited SFO.  Some protestors participated in these activities nude.  During this period of time the sidewalks, windows and doors of SFO were occasionally befouled by fecal matter, urine, chalk and red paint.  Protestors also allegedly issued death threats to Plaintiffs, appeared outside their personal residence, and communicated with the lessor of the SFO retail store.

Plaintiffs, Gregg Schumacher and his wife Linda, filed suit

against the City of Portland alleging viewpoint discrimination in contravention of the First Amendment, and violations of Plaintiffs' rights to equal protection and substantive due process under the Fourteenth Amendment.  These claims were predicated on Plaintiffs' belief that the City of Portland failed to protect Plaintiffs and their property against illegal protest activity.  Plaintiffs also named the City of Portland in four out of five of their state law claims, including Intentional Infliction of Emotional Distress; Interference with Business Relations; Interference with Contract; and, Public Nuisance. Finally, Plaintiffs sued all Defendants except the City of Portland for Trespass.  These five claims were predicated on Plaintiffs' contention that PETA, IDA, Animal Liberation Front (ALF), and the named individual Defendants, organized, promoted, and participated in illegal protest activity outside SFO store, interfered with SFO's domain name, contacted prospective landlords to discourage them from renting to Plaintiffs, surreptitiously entered the SFO store and placed anti-fur literature into the pockets of merchandise on display, and issued death threats to Plaintiffs.

In total, Plaintiffs brought seven claims against the City of Portland and five claims against the others, seeking $6.6 million in money damages.  Plaintiffs alleged the City of Portland was liable for up to $6.2 million for their respective

5  -  OPINION AND ORDER

actions and inaction, and each of the remaining Defendants were liable for up to $6.6 million for their respective actions.

Having prevailed on their Motions to Strike these claims, PETA, IDA and Mieras (collectively referred to as the "prevailing Defendants") now seek attorney fees under ORS § 31.152(3), totaling **$99,430.85** for 463.7 hours of work. Specifically, PETA requests fees in the amount of $45,745.85 for 180.4 hours of work; IDA requests $34,735 for 136.5 hours of work; and Mieras requests $18,950 for 146.8 hours of work.

### STANDARDS

In diversity cases, attorney fee awards are governed by state law. *Gardner v. Martin*, 2006 WL 2711777, *2 (D. Or. Sept. 19, 2006) (unpublished). Oregon law provides that a "defendant who prevails on a special motion to strike made under ORS § 31.150 shall be awarded reasonable attorney fees and costs." *See* ORS § 31.152(3). Thus, there is not any dispute that Defendants are entitled to attorney fees in this case. The only dispute is over whether the fees requested are reasonable.

Even when the opposing party does not object to a motion for attorney fees, the district court has an independent duty to review the petition for reasonableness, and to give a "concise but clear" explanation for how it arrived at the amount of compensable hours for which fees were awarded, to allow for meaningful appellate review. *Cunningham v. County of Los*

6  -   OPINION AND ORDER

*Angeles,* 879 F.2d 481, 485 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035 (1990).

To determine a reasonable attorney fee award the Court considers the factors set out in ORS § 20.075. *Gardner*, 2006 WL 2711777, *3. Subsection (1) requires the Court to consider the following factors in analyzing the reasonableness of the requested fee:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal;

(b) The objective reasonableness of the claims and defenses asserted by the parties;

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases;

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses;

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings;

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute;

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190; and,

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

Subsection (2) of ORS § 20.075 requires the Court to consider the following additional factors:

7 -   OPINION AND ORDER

(a) The time and labor required in the proceeding, the
novelty and difficulty of the questions involved in the
proceeding and the skill needed to properly perform the
legal services;

(b) The likelihood, if apparent to the client, that the
acceptance of the particular employment by the attorney
would preclude the attorney from taking other cases;

(c) The fee customarily charged in the locality for similar
legal services;

(d) The amount involved in the controversy and the results
obtained;

(e) The time limitations imposed by the client or the
circumstances of the case;

(f) The nature and length of the attorney's professional
relationship with the client;

(g) The experience, reputation and ability of the attorney
performing the services;

(h) Whether the fee of the attorney is fixed or contingent.

As a benchmark for comparing the attorneys' billing rates
under subsection (2)(c) with the fee customarily charged in the
locality, this Court uses the most recent Oregon State Bar (OSB)
Economic Survey, adjusted for inflation between the date the
survey was published and the date the legal services were
performed. *Bell v. Clackamas County*, 341 F. 3d 858, 868 (9th
Cir. 2003). The most recent OSB Economic Survey was published in
2002[2], and the average rate of inflation from 2002 to 2007 is

---

[2] The OSB Economic Survey is available at:
www.osbar.org/surveys_research/econsurv02/econsurvey02.html.

rounded to 3 percent[3].

**DISCUSSION**

Plaintiffs object to the amount of attorney fees requested by each of the parties who filed motions for fees in this case. Plaintiffs argue that most of the ORS 20.075(1) factors either favor them, or are neutral as compared to any of the parties. The prevailing Defendants disagree, and contend that most of the ORS § 20.075(2) factors favor awarding the full amount of fees they request, as discussed below.

As a preliminary matter, Plaintiffs' argument that the fee award as to each Defendant should be limited to the work performed in preparation for the Motions to Strike is rejected. This argument was previously turned down in *Card v. Pipes*, 2004 WL 1403007, *1 (D. Or. June 22, 2004)(holding that ORS § 31.152(3) does not contain any such limiting provision) and therefore does not merit further discussion.

**I.    ORS 20.075(1) Factors**

    **(a)    The Conduct of the Parties in the Transactions and Occurrences that Gave Rise to the Litigation**

According to Plaintiffs, the conduct of the parties in the transactions or occurrences that gave rise to the litigation (ORS § 20.075(1)(a)) favors them because Plaintiffs "faced protests outside their store by individuals and groups of varying size for

---

[3] The Consumer Price Index is available on the Bureau of Labor Statistics website at: http://www.bls.gov/cpi.

9  -    OPINION AND ORDER

a period of approximately 18 months, as well as anonymous threats
to [their] persons and property."  Also, Plaintiffs say even if
they could not prove it, their belief that Mieras
"surreptitiously appeared" at their residence also favors them on
this factor.  Plaintiffs acknowledge there is "limited evidence
they responded on occasion to protestors in less than flattering
terms," but argue that such conduct was brief.

I pass no judgment on Plaintiffs' response to the protest
activity, such as hosting "half-off during protest" sales,
because I believe the Plaintiffs' relevant "transactions or
occurrences that gave rise to the litigation" were running a fur
business, which is a lawful activity, and the evidence before me
does not establish Plaintiffs did anything illegal in response to
the protesting.

Although the Court has repeatedly sympathized with
Plaintiffs' position of not knowing exactly who committed the
illegal acts documented in their photographic and videographic
evidence, in granting the Motions to Strike the Court held that
Plaintiffs did not prove it was the prevailing Defendants.  The
Court specifically rejected Plaintiffs' contention that the
illegal acts of other protestors should be imputed to the
prevailing Defendants.  Thus, I reject Plaintiffs' continued
attempt to do so here.  Moreover, the Court credited Mieras'
unchallenged live testimony that he has never been to Plaintiffs'

residence, and explicitly rejected Plaintiffs' argument that the appearance of PETA literature at the protests proves anything other than that PETA distributes informational materials to the public.  For all of these reasons, I find this factor is neutral.

**(b)  The Objective Reasonableness of the Claims and Defenses Asserted by the Parties**

Plaintiffs contend their claims were reasonable, even though the Court found Plaintiffs did not show a probability of prevailing on the merits of any of the claims against PETA, IDA, Rossell, Durkee or Mieras.  According to Plaintiffs "the record is replete with evidence" that PETA, members of IDA and Mieras participated in the protests and that some of that activity constituted illegal conduct, not protected speech.  Since the Portland Police Bureau allegedly refused to protect them from this illegal activity, Plaintiffs contend they did not have an alternative but to seek the court's intervention.  Plaintiffs also seem to suggest the Court should consider that Plaintiffs did not have an opportunity to conduct discovery in the reasonableness review, even though Plaintiffs chose not to avail themselves of the right to request specific discovery under ORS § 31.152(2).

I will not address the objective reasonableness of Plaintiffs' claims against the City of Portland, as the City of Portland is not a party to the motion for fees.  Turning to the objective reasonableness of the claims against the prevailing

11 -   OPINION AND ORDER

Defendants, I find it was not objectively reasonable to sue the organizations and individuals Plaintiffs were able to identify at the protests, or whose publications were identified as in the case of PETA, on the hunch that those organizations and individuals must be involved in the illegal activities of other protestors Plaintiffs could not identify.  Certainly, Plaintiffs' had photographic and videographic evidence of people clearly violating municipal prohibitions on public nudity and harassment. I also recognize Plaintiffs' repeated arguments that the City's failure to protect against and investigate these incidents lies at the heart of why Plaintiffs cannot do more to identify protestors.  But I granted the Motions to Strike because Plaintiffs did not produce evidence the prevailing defendants did anything illegal.  Thus, I find Plaintiffs claims against the prevailing Defendants were not objectively reasonable.

ORS § 20.075(1)(b) asks the Court to also consider the objective reasonableness of the defenses asserted by the parties. The Defenses asserted by the prevailing Defendants were all objectively reasonable.  They fought the preliminary injunction and attempted to dispose of what they believed was a Strategic Lawsuit Against Public Participation (SLAPP) at the earliest possible point in the litigation.  Although preparing an anti-SLAPP Motion to Strike does require some evidentiary investigation and presentation, the Oregon legislature intended

12 -   OPINION AND ORDER

it as a tool to dispose of unmeritorious lawsuits as a matter of
law while avoiding the time and expense of trial preparation.
*Metabolife Int'l, Inc. v. Wornick*, 264 f. 3d 832, 837 n. 7 (9th
Cir. 2001).  This was an objectively reasonable defense strategy
to employ.

　　In summary, the subsection (1)(b) factor favors the
prevailing Defendants.

### (c) & (d) The Deterrent Effect of an Award on Future Litigants

　　According to Plaintiffs, awarding attorney fees to the
prevailing Defendants would be "an incredible deterrent" to
future business owners who seek "the assistance of the court
after being denied the assistance of law enforcement and city
officials in connection with extended protests."  Further,
Plaintiffs contend that it would be "unfair" to them, personally,
to award attorney fees in this case because it would amount to
further financial punishment "after being run out of business."
In Plaintiffs' words,

> In a similar situation, a plaintiff facing irreparable harm,
> but also facing the potential of an Anti-SLAPP motion, will
> hesitate in, or simply forego, bringing a claim because of
> the very real threat that a court could dismiss that case
> with an award of fees to the defendant.  Such a threat works
> to the advantage of concerns with large bankrolls and to the
> detriment of those persons most in need of the Court to
> protect their freedoms and rights.

　　As previously stated, it is mandatory under Oregon law to
award attorney fees to the prevailing party in an anti-SLAPP

13 -    OPINION AND ORDER

Motion to Strike. *See* ORS § 31.152(3). The only discretion the Court may exercise at this point is in deciding how much to award.

The Court takes very seriously the work of properly proportioning the interests of deterring meritless claims and safeguarding the right to pursue meritorious claims. The fee shifting provisions in ORS § 31.152(3) are designed to achieve this balance by discouraging those who would abuse the litigation process. Thus, where extraordinary attorney fees are awarded pursuant to ORS § 31.152(3), one would expect to see equally extraordinary facts.

The facts of this case are, indeed, extraordinary. Although Plaintiffs may have had meritorious claims against people whose names they did not know, or even against the City of Portland, they sued people against whom they had no evidence for $6.6 million, sought to restrict their First Amendment speech rights, and disparaged their reputations with accusations of criminal conduct, terrorist affiliations, and responsibility for "shutting down" a business whose financial solvency was questionable before the protesting activities began. This was an extraordinary abuse of the litigation process. Although I am slightly reducing the fees requested, as explained below, I find that awarding fees in this case will properly serve to deter putative plaintiffs from filing multi-million dollar suits against non-profit groups and

14 -   OPINION AND ORDER

private citizens engaged in First Amendment activities until they
have thoroughly investigated the facts and researched the law.
Thus, this factor favors the prevailing Defendants.

> **(e) & (f)  The Objective Reasonableness and Diligence of the
> Parties and their Attorneys During the Proceedings
> and in Pursuing Settlement**

Plaintiffs contend their interactions with defense counsel
for IDA and Mieras, were "within objectively reasonable
parameters, [and that] the factors concerning the manner in which
the parties conducted litigation and settlement negotiations
appear neutral. . ."  However, Plaintiffs also contend that IDA
did not confer in good-faith because although "a telephone
conversation did take place" IDA did not provide Plaintiffs with
a description of rates or hours prior to filing the motion for
fees.  In any event, there is not any evidence before me to
suggest Plaintiffs asked for a detailed explanation of the hours
billed or rates charged by IDA's counsel, or that Plaintiffs or
IDA or Mieras ever made attempts to settle out-of-court.  Thus,
with respect to subsection (1)(f), this factor is neutral as
between Plaintiffs, Mieras, and IDA.

Plaintiffs contend that PETA's out-of-court communications
had a "capitulate or else" tone and imposed short deadlines for
various offers to waive attorney fees in exchange for dismissing
them from the case.  While this may be, PETA made aggressive
efforts to spare Plaintiffs from having to pay the high price of

bringing a SLAPP suit.  Less than 15 days after Plaintiffs filed
their complaint, PETA's counsel informed Plaintiffs' counsel that
PETA was not involved in the conduct alleged, and requested that
Plaintiffs dismiss PETA from their motion for a preliminary
injunction.  When Plaintiffs refused, PETA gave Plaintiffs notice
that it would attempt to recover the full costs of defending
itself vis-a-vis an anti-SLAPP motion.  After the Court denied
Plaintiffs' Motion for Preliminary Injunction as to PETA, PETA's
counsel informed Plaintiffs' counsel it would not seek to recover
any of the costs incurred to date if Plaintiffs agreed to dismiss
PETA before PETA began working on its anti-SLAPP reply
memorandum.  After the Court granted PETA's Motion to Strike,
PETA's counsel phoned Plaintiffs' counsel and gave them an
estimate of PETA's costs as of June 22, 2007, stating that PETA
would be interested in resolving the issue of fees without filing
a Motion for Attorney Fees.  Evidently PETA's oral estimate of
costs was low because some work had not been entered into the
billing system on the date PETA rendered the estimate.  In any
event, Plaintiffs never asked for a detailed explanation of the
hours billed or rates charged by PETA's counsel before rejecting
PETA's offer.  For all these reasons, I find the subsection
(1)(f) factors favors PETA.

    I also find the subsection (1)(e) factor favors the
prevailing Defendants.  Plaintiffs' lack of reasonableness during

the proceedings is illustrated by choosing to vacation in Mexico rather than attend the hearing on their Motion for Preliminary Injunction, in which they sought to restrict the constitutional rights of the prevailing Defendants, and actually succeeded in restricting Mieras' rights.  When Mieras later testified in open court that he has never been to Plaintiffs' residence nor issued them any threats, Plaintiffs still did not appear in court. Plaintiffs and Plaintiffs' counsel's objective lack of reasonableness is further demonstrated by filing the Motion for Reconsideration rather than appealing to the circuit court, which would have been the proper procedure for advancing the arguments raised in that motion, none of which presented a reason that would even allow the Court to grant relief under Federal Rule of Civil Procedure 60.  PETA billed $6629.85 and IDA billed $4912.50 just to respond to this motion.  For all of these reasons I find the subsection (1)(e) factor strongly favors the prevailing Defendants.

In summary, I find most of the ORS 20.075(1) factors support the conclusion that the fees requested by the prevailing Defendants are reasonable.

## II.  ORS 20.075(2) Factors

### A.  Mieras

Mieras's counsel requests $18,950 for 146.8 hours of work. Mieras was represented by Jami Pannell, who is a staff attorney

17 -   OPINION AND ORDER

at Lewis & Clark Law School's Animal Law Clinic, which is a non-profit organization that does not charge clients a fee, but seeks to collect attorney fees from opposing counsel if possible.  Ms. Pannell bills $125 per hour for her out-of-court time, and $200 for in-court time.  Ms. Pannell certifies that she spent 79.4 out-of-court hours on this case, and 4 hours in-court. Ms. Pannell was assisted by Shauna Curphey of the Northwest Constitutional Rights Center, also a non-profit organization. Ms. Curphey certifies to the same fee arrangement and billing rates as Ms. Pannell.  Ms. Curphey spent 59.2 hours out-of-court and 4 hours in-court on this case.

According to Mieras' counsel, seven of the eight subsection (2) factors favor granting their requested fee, as follows: (a) Mieras was the only Defendant enjoined in this matter and the only Defendant whose anti-SLAPP motion was not originally granted in its entirety, so more time and labor was required to properly represent Mieras as compared to the other Defendants; (b) representing Mieras precluded counsel from taking other cases because the Animal Law Clinic and the Northwest Constitutional Rights Center have limited resources and staff; (c) the average fee charged in Portland for similar services rendered by attorneys of similar experience is $167 per hour[4], whereas

---

[4] This figure is obtained by adjusting the 2002 Oregon State Bar (OSB) Economic Survey average rate for attorneys admitted to practice 0-3 years ($144) for inflation at 3 percent

Mieras' counsel's average fee is $129 per hour[5]; (d) Mieras was potentially on the hook for $6.6 million but his counsel obtained a "completely favorable" result; (e) Mieras' counsel worked under "exceptional time limitations" because of the "unique circumstances of the case"[6]; (f) Mieras' counsel's unique focus on animal and constitutional rights should be considered as it pertains to the nature of counsel's relationship with Mieras; (g) Ms. Pannell and Ms. Curphey's rates are below the adjusted average for attorneys with three years of practice.

Plaintiffs do not object to the rates charged by Mieras' counsel. However, Plaintiffs argue Mieras' bill violates prohibitions on "block billing," and that Mieras' counsel was not precluded from doing other work during the pendency of this case. I reject this argument as Ms. Pannell and Ms. Curphey's declarations do indeed properly itemize individual tasks

---

through 2007.  The OSB Economic Survey is available at: www.osbar.org/surveys_research/econsurv02/econsurvey02.html.

[5] Both of Mieras' attorneys charge $200 per hour for courtroom time and $125 per hour for out-of-court time.

[6] Counsel is presumably referring to the fact Ms. Pannell filed a notice of appearance on behalf of Mieras just before the hearing on the  preliminary injunction.  Prior to that time, Mieras was represented by Mark McDougal, who represented IDA, Rossell and Durkee throughout.  Counsel faced the additional time constraints engendered by the requirement in ORS § 31.152(1) that the anti-SLAPP Motion to Strike be filed within 60 days of serving the complaint.  Mieras also joined IDA's Motion to Strike, filed by Mark McDougal, however Ms. Pannell and Ms. Curphey represented Mieras at the hearing on this motion.

19 -   OPINION AND ORDER

performed, billed on a one-tenth hour basis.  Plaintiffs have not
presented any evidence to rebut the presumption of honesty
afforded the sworn declarations of Mieras' counsel that they were
precluded from taking other work during the pendency of this
case.  *See* Exhibit A to the Pannell Declaration; Exhibit A to the
Curphey Declaration.  In all other respects I concur with Mieras'
counsel that the subsection (2) factors favor awarding the full
fee requested.  Thus, I award Mieras' counsel $18,950.

### ii.  PETA

PETA requests fees in the amount of $45,745.85 for 180.4
hours of work.  Three attorneys worked on this case in the
following capacities: (1) Philip Hirschkop of Hirschkop &
Associates in Virginia spent 12 hours reviewing the complaint and
assisting PETA in retaining local counsel at Lane Powell.  He was
not admitted *pro hac vice* in this case, nor did he do any
substantive work; (2) David G. Hosenpud of Lane Powell, the lead
attorney for PETA, spent 23.1 hours analyzing the claims,
reviewing and revising the work of Eric D. Wilson (an associate
at Lane Powell who did most of the writing) and preparing for,
and attending the two court hearings.  He has 24 years of
experience; (3) Eric. D. Wilson, who has three years of
experience, spent 145.3 hours analyzing and researching the
issues in the case, drafting all motions, memoranda and
supporting materials, conferencing with his client, co-defense

20 -   OPINION AND ORDER

counsel, and opposing counsel, and incorporating revisions.

PETA's counsel avers its requested fee should be awarded because most of the subsection (2) factors weigh in PETA's favor, as follows: (a) the time and labor required was extensive and the issues were complex; (b) PETA's counsel was not precluded from taking other work, so this factor is neutral; (c) the $355.50 hourly rate billed by David Hosenpud and the $350 hourly rate billed by Phil Hirschkop are between the 75th and 95th percentile rate for business and corporate litigation attorneys, and the $229.50 hourly rate billed by Eric Wilson is between the 25th and 50th percentile rate for business and corporate litigation attorneys; (d) the amount in controversy was millions of dollars[7] and counsel achieved a "complete victory" for PETA; (e) the circumstances of this case imposed strict time limitations on counsel, who drafted three briefs and argued two motions in a five-week period; (f) Philip Hirschkop, who billed 12 hours for finding local counsel, has a long-standing relationship with PETA; (g) the attorneys representing PETA in this matter "are highly skilled and have excellent reputations in their respective communities; and, (h) Lane Powell agreed to a 10 percent reduction on their standard hourly rate because PETA is a nonprofit organization.  If attorney fees are not awarded PETA

---

[7] PETA says over $7 million, though by the Court's computations the amount in claims against the Defendants other than the City of Portland totaled $6.6 million.

will have to pay counsel out of pocket.

Plaintiffs do not dispute that the time and labor involved in this case was substantial, and that the litigation took place in a compressed time frame. However, Plaintiffs dispute PETA's contention that the case involved complex legal issues and they argue that 180 hours is an excessive amount of work for the nature of this litigation. Moreover, Plaintiffs contend that most nonprofit organizations do not pay rates between the 75th and 95th percentile for business and corporate litigation attorneys. Plaintiffs' counsel states that he routinely charges nonprofit organizations between $0 to $185 per hour for services similar to those rendered by PETA's counsel.

Turning first to the fees, I concur with PETA that the fee Plaintiffs' counsel allegedly charges is immaterial to the determination of a reasonable fee award here. The fees charged by the attorneys at Lane Powell are well within the range of fees customarily charged for the services they rendered, based on the inflation adjusted 2002 OSB Economic Survey. However, the administrative services rendered by Philip Hirschkop – reviewing court submissions and making a few phone calls and emails – do not justify a $350 per hour billing rate. Therefore, I award Mr. Hirschkop $1500, which I believe adequately accounts for his role in this matter and his long-standing relationship as PETA's legal advisor.

22 -    OPINION AND ORDER

With respect to the time billed, although I would not characterize the claims in this case "complex" – they were garden variety tort claims – the matter was perplexing. First Amendment issues undergirded each of the claims, and due to the number of defendants and the interrelationship between individual and organization rights and liability defense counsel was presented with a sizable ball of yarn to unravel.

Moreover, unlike in *Gardner*, 2006 WL 2711777, *8 (D. Or. Sep. 19, 2006), and the most recent case out of this district addressing anti-SLAPP attorney fees, *Northon v. Rule*, 494 F.Supp.2d 1183 (D.Or., June 11, 2007)(in which I reduced the prevailing defendant's fee request from $209,334.36 to $40,000), the time billed in this case represents work on more than just the anti-SLAPP Motion to Strike. The prevailing defendants were also forced to defend themselves against Plaintiffs' Motion for a Preliminary Injunction, which also required oral argument, and against Plaintiffs' Motion for Reconsideration, which I have already noted was completely without merit. Thus, the time spent by the prevailing Defendants represents work on three substantive motions, in addition to two court hearings and time spent responding to Plaintiffs' objections to PETA's Motion for Attorney Fees. Accordingly, I award Lane Powell the full fees they request in the amount of $41,685.85.

23 -   OPINION AND ORDER

### iii. IDA, Rossell & Durkee

IDA, Rossell and Durkee (IDA) request $34,735 for 136.5 hours of work.  Three attorneys worked on this case in the following capacities: (1) Gregory Kafoury of Kafoury & McDougal spent 19.25 hours reviewing the complaint and supporting materials, drafting the Motion to Strike, preparing for and attending the hearing on the Motion for Preliminary Injunction, and reviewing and editing the Motion to Strike materials prepared by his co-counsel for IDA.  Mr. Kafoury has 18 years of experience; (2) Mark McDougal of Kafoury & McDougal, who also had 18 years of experience, spent 56.5 hours conferring with counsel for the other prevailing Defendants, researching and drafting the Motion to Strike, preparing for and attending the court hearings, and reviewing and editing Natalie McDougal's work; (3) Natalie McDougal of Kafoury & McDougal spent 60.75 hours reviewing the complaint and supporting materials, researching the law on anti-SLAPP and pendent jurisdiction issues, drafting the Motion to Dismiss for Pendant Party Jurisdiction, attending the court hearings, assisting Mieras' counsel in preparing his Motion for Reconsideration, reviewing co-defendants' filings and Plaintiffs' responses to them, and researching the law and drafting a response to Plaintiffs' Motion for Reconsideration.  Ms. McDougal has three years of experience.

IDA contends at least five of the eight subsection (2)

factors support awarding this fee, as follows: (a) extensive time
and labor was required to handle complex issues; (b) counsel's
availability to handle other matters was limited during the
pendency of this case; (c) Plaintiffs' have not rebutted IDA's
contention that IDA's counsel qualifies to charge the rates
billed; (d) millions of dollars were involved in the controversy
and IDA's counsel contends it obtained a complete victory; and
finally, skipping factors (e) and (f): (g) IDA's counsel contends
it has "substantial experience and expertise in matters involving
activists and First Amendment issues."

    First, as to fees billed, I reject IDA's counsel's
contention that the OSB Economic Survey should not be used as a
benchmark for deciding if a rate is reasonable.  The subsection
(2)(c) factor requires the Court to consider what fee is
"customarily charged in the locality for similar legal services,"
and indeed the Court references the OSB Economic Survey to do
so.[8]  Since IDA's counsel did not address where their billing
rates fall on this scale, the following reflects the Court's
calculations.  Mr. Kafoury's $350 hourly rate falls between the
75th and 95th percentile for business and corporate litigation,
and approximately the 75th percentile for civil litigation
defense.  Mr. McDougal's $300 hourly rate falls within the 75th

---

    [8] As above, I find the fee Plaintiffs' counsel claims to
charge nonprofit organizations for similar services immaterial to
my consideration of what a reasonable fee is under the law.

25 -    OPINION AND ORDER

percentile for business and corporate litigation, and between the 50th and 75th percentile for civil litigation.  Ms. McDougal's $195 hourly rate falls near the 25th percentile for business and corporate litigation, and below that for civil litigation defense.  In sum, the fees charged by the attorneys at Kafoury & McDougal are well within the range of fees customarily charged for the services they rendered, based on the inflation adjusted 2002 OSB Economic Survey.

With respect to the hours billed, there is no merit to Plaintiffs' boilerplate contention that IDA's counsel violated prohibitions on "block billing."  IDA's counsel clearly attributed their time to specific tasks.  For the reasons I cite under my discussion of PETA's fees, above, I find IDA billed a reasonable number of hours considering the nature of the case, the multiple motions litigated, the time and labor required to do so in a condensed period of time, and the expertise and ability of IDA's counsel.  Accordingly, I award Kafoury & McDougal the full fees they request, in the amount of $34,735.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Attorney Fees are GRANTED IN PART, in the following amounts: Mieras (#104) in the amount of **$18,950**; PETA (#76) in the amount of **$1500** for Mr. Hirschkop and **$41,685.85** for Lane Powell; IDA, Rossell and Durkee (#84) in the amount of **$34,735.**

IT IS SO ORDERED.

DATED this ___23rd___ day of January, 2008.


/s/ Michael W. Mosman
MICHAEL MOSMAN
United States District Judge

27 -   OPINION AND ORDER